STATE of Delaware, Defendant
Below, Appellant,

v.

Christopher PRUITT, Plaintiff
Below, Appellee.

No. 204, 2001.

Supreme Court of Delaware.

Submitted: Oct. 16, 2001.
Decided: March 28, 2002.

Allison L. Peters, Department of Justice, Wilmington, Delaware, for appellant.

Louis B. Ferrara, Ferrara, Haley, Bevis & Solomon, Wilmington, Delaware, for appellee.

BEFORE: VEASEY, Chief Justice, WALSH and STEELE, Justices.

STEELE, Justice.

The State of Delaware appeals the April 2, 2001 order of the Superior Court granting Appellee, Defendant-below, Christopher Pruitt's Motion to Dismiss charges brought in Superior Court by indictment for Driving Under the Influence, Driving While License Suspended or Revoked, and Disregarding a Red Light. A Justice of the Peace, unable to locate the substantiating summons and complaints when Pruitt appeared before him, had previously dismissed identical charges on November 8, 2000. The following day, after the arresting officer informed the court that the summons and complaints in fact had been filed, the court clerk located them in another file and a sitting Justice of the Peace reinstated the charges without notice to Pruitt that he had been asked to do so by the arresting officer. The State later entered a *nolle prosequi* and brought identical charges by indictment in the Superior Court. On Pruitt's motion, a Superior Court judge dismissed the charges, ruling from the bench that the arresting officer's *ex parte* motion to reinstate the charges and the Justice of the Peace's action reinstating the charges violated Pruitt's due process rights.

This Court must determine whether the Superior Court judge abused his discretion when he granted Pruitt's Motion to Dismiss. Although Pruitt raised his Motion to Dismiss under Superior Court Criminal Rule 12(b), we agree with the State that the Superior Court judge's comments supporting his decision to grant Pruitt's Motion to Dismiss imply an equal reliance on Rule 48(b). Therefore, we shall examine this appeal in the context of Rule 48.

We find that the State's entry of a *nolle prosequi* on the reinstated charges and later prosecution of those identical charges in the Superior Court unfairly manipulated the judicial process, delayed the swift reso-

lution of the charges against Pruitt, and created undue prejudice that could only be remedied by the prompt dismissal of the charges by that court. Moreover, the State's practice of dismissing charges brought before an inferior court and reinstating them in the Superior Court in this case was prejudicial and inconsistent with the fair and orderly administration of justice. Therefore, we AFFIRM the Superior Court's dismissal of the motor vehicle charges pending against Appellee Pruitt.

On November 3, 2000, Patrolman Leccia of the Wilmington Police arrested Christopher Pruitt on several traffic charges, including Driving Under the Influence, Driving While License Suspended or Revoked, and Disregarding a Red Light. Leccia also arrested Pruitt for possession of marijuana. The officer issued two separate summonses, one directing Pruitt to appear before a Justice of the Peace on November 7, 2000 for the traffic charges and the second to appear in Justice of the Peace Court on November 20, 2000 for arraignment on the marijuana charge.

Pruitt appeared in Justice of the Peace Court on November 7 as directed. On that date, the Justice of the Peace could not find any paperwork documenting the traffic charges relating to Pruitt's arrest and ordered him to return the following day. On November 8, court personnel still could not locate the paperwork, and the Justice of the Peace dismissed the traffic complaints. When Leccia learned that the traffic charges had been dismissed because the court was unable to find the supporting paperwork, the officer informed the clerk of the court that he had properly provided the court with the summons and complaints. The clerk then discovered that the paperwork had been mistakenly filed with that submitted for the marijuana charge.

After learning that the clerk's office had misfiled the paperwork, the Justice of the Peace reinstated the traffic charges and reset their hearing for November 20, the same date previously scheduled for arraignment only on the marijuana charge. The Bail Sheet for Pruitt's case stated that the case had been "reopened per officer Leccia's Motion." The Court did not provide Pruitt with notice that any motion had been made by the officer or that the Court would even entertain much less rule on the officer's application. The Court further failed to notify Pruitt that the charges had, in fact, been reinstated and rescheduled for a hearing on November 20. Pruitt did not appear on November 20.

At an undefined point during these proceedings, Leccia apparently asked the Office of the Attorney General to enter the case. On January 19, 2001, that office entered a *nolle prosequi* on the traffic complaints and the marijuana charge. The Office of the Attorney General then brought identical charges by indictment in Superior Court. On April 2, 2001, a Superior Court judge granted Pruitt's Motion to Dismiss the traffic offenses.

The State's entry of a *nolle prosequi* in the Justice of the Peace Court moots the need for a complete review of that court's decision to reinstate the charges against Pruitt on the *ex parte* application of the State. A full understanding of that decision and its legal infirmities is important to any examination of the State's manipulation of the Pruitt prosecution, however. Thus the Superior Court judge appropriately considered the action of the Justice of the Peace when rendering his decision. It is likewise appropriate for this Court to undertake a similar inquiry when determining whether or not the Superior Court judge exercised his Rule 48 power with appropriate discretion.

■ Under well-settled Delaware law, a Justice of the Peace enjoys the same prerogative as any other court to reinstate charges it has previously dismissed.[1] This power is at the root of that court's Rule 36 authority to correct, *sua sponte*, clerical mistakes in judgments, orders, or other parts of the record. Even though this rule allows a Justice of the Peace to correct certain of these errors without notice,[2] this does not translate into unqualified authority to dispense with notice where due process would otherwise require it.[3]

■ A decision by any trial court to reinstate charges that it had previously dismissed may come only after all parties have been given adequate notice and an opportunity to be heard. Indeed, our courts have held that appropriate notice of a judicial action and an adequate opportunity to be heard are the essential elements of the procedural due process guaranteed by the Fourteenth Amendment.[4] This protection includes the right to receive notice and to be heard at "a meaningful time and in a meaningful manner" before the deprivation of a protected interest.[5] Although the courts maintain some flexibility in the manner by which they protect the rights of parties to present an argument, this Court has held that, at a minimum, due process requires some form of notice and a hearing.[6]

The United States Court of Appeals for the Third Circuit examined these precise factors when it addressed the particular question of whether a decision in a criminal case that results from an *ex parte* communication by a state agent is prohibited under the Fourteenth Amendment. In *Yohn v. Love*,[7] that court held that an *ex parte* conversation between the Chief Justice of Pennsylvania, the trial judge and the prosecutor was improper under a due process analysis.[8] The conversation amounted to a *de facto* appeal of a trial court's ruling on the admissibility of evidence and therefore violated the defendant's constitutional guarantee to procedural due process.[9] In *Yohn*, even though the court noted that defense counsel was in the room, defense counsel could not participate in a telephone conversation in which the Chief Justice gave his opinion of the trial court's ruling. This procedure failed to provide the defendant with a sufficient hearing.[10] Moreover, the court found that the lack of notice that the hearing was even taking place[11] deprived defense counsel of any meaningful time to prepare a response to the Commonwealth's argument and thus compounded

1. *State v. Guthman*, 619 A.2d 1175, 1178–79 (Del.1993).

2. J.P.Crim.R. 36.

3. Rule 36 is intended as a tool for the courts to correct clerical errors appearing on the face of the record to reflect the court's previously announced intent. It is not appropriately invoked in any case in which substantive rights have yet to be determined. *See Guyer v. State*, 453 A.2d 462 (Del.1982) (Rule 36 properly applied to change sentencing to reflect trial judge's originally manifested intent).

4. *Aprile v. State*, 143 A.2d 739, 744 (Del.Super.Ct.1958), *aff'd*, 146 A.2d 180 (Del.1958).

5. *Slawik v. State*, 480 A.2d 636, 645 (Del. 1984).

6. *Id.*

7. 76 F.3d 508 (3d Cir.1996).

8. *Id.* at 517.

9. *Id.*

10. *Id.*

11. Although the attorney was in the room, he was only informed of the nature of the conversation once it had ended.

the violation of his client's due process rights.[12]

■ Because lack of notice prejudices an individual by depriving him of the right to be heard, it provides an independent basis for relief from a judgment.[13] Accordingly, an *ex parte* conversation, which by definition deprives a defendant of the right to be heard, is also an independent legal basis for relief from a judgment. Here, as in *Yohn*, the police officer's *ex parte* communication of his application to reinstate the traffic charges led to a *de facto* reconsideration of the court's earlier dismissal. The fact that the Justice of the Peace Court both failed to provide notice to Pruitt and based its decision on this *ex parte* application are prejudicial to Pruitt and standing alone constitute a due process violation.

■ In addition, the mere fact that the Justice of the Peace placed the reopened traffic charges on the docket to coincide with Pruitt's previously scheduled arraignment on the marijuana charge does not satisfy a court's due process obligation. In *Tsipouras*, we held that an appropriate notice must be reasonably calculated not only to apprise a party of the pendency of an action, but of its nature as well.[14] In that case, the notice sent to a husband of a hearing on his former wife's "Motion & Affidavit to Modify Custody Order" was not meaningful because it made no mention of a pending contempt charge that the court also intended to address.[15] This reasoning comports with the United States Supreme Court's holding that a State must give notice sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and that notice must also set forth with particularity the alleged misconduct in order to comply with due process requirements.[16] In this instance, the failure of the Justice of the Peace to inform Pruitt that he had reinstated the traffic charges is not rendered harmless by the fact that he ordered them combined with earlier notice to appear for a mere arraignment on the marijuana charge. For these reasons, we find that the Superior Court judge correctly determined that the Justice of the Peace's action rested on a constitutionally questionable foundation. The tenuous basis for the Justice of the Peace's holding understandably heightened the Superior Court's suspicion of the State's entry of a *nolle prosequi* and decision to proceed by indictment on identical charges in Superior Court.

We have long recognized that the potential for prejudice to a defendant exists any time a previously dismissed charge is reinstated, filed anew, reinstituted or renewed by any other name, either by the State or the courts. Indeed, in *State v. Fischer*, we noted that the prejudice this delay in prosecution presupposes is not limited to the traditional considerations connected to the constitutional guarantee of a speedy trial: the death and disappearance of witnesses, the loss of evidence, or any other denial of a reasonable opportunity to prepare for

---

12. *Yohn*, 76 F.3d at 517.

13. *See Tsipouras v. Tsipouras*, 677 A.2d 493, 496 (Del.1996) (defective notice constitutes an independent basis for relief).

14. *Id.* Although *Tsipouras* was originally filed as a civil action in the Family Court, the liberty interests at stake in a criminal matter dictate an equal, if not greater, adherence to the provision of notice necessary to comply with our due process requirements.

15. *Id.*

16. *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

trial.[17] Similarly prejudicial is the anxiety suffered by a defendant as the result of the delay and uncertainty of a duplicative prosecution; the notoriety suffered by both a defendant and his family as the result of the recommencement of a prosecution for the same offense; and the expenses, "legal and otherwise," that accompany any renewal of a dismissed action.[18]

Although in *Fischer* we addressed these potential prejudices in the context of delays caused by prosecutorial action, the defendant suffers equally when the reinstatement is the result of judicial action.[19] Nevertheless, as the State correctly argues, we have held that, absent a delay of constitutional dimensions, a dismissal under Rule 48 must be attributable to the prosecution, despite the prejudicial effects.[20] Thus, the State asserts, any prejudice to Pruitt cannot result in a Rule 48 dismissal because it was the product of the Justice of the Peace's reinstatement of the charges and, therefore, the State was not responsible for any prejudicial delay. However, this argument rests on the faulty, and frankly mystifying, assumption that the State's entrance of a *nolle prosequi* and later decision to proceed by indictment on identical charges in the Superior Court did nothing to compound the prejudicial effects to Pruitt.

Even though the Superior Court judge engaged in an extensive examination of what he perceived to be a due process violation by the Justice of the Peace, the crux of his decision to dismiss is found in his analysis of the State's actions. He observed on the record: "And let me tell you why I sense something irregular. Because somebody looked at the file, my guess, and said, 'There's a serious defect here so we need to *nolle pros* and then indict and that will cure it.' " Clearly, the Superior Court judge based his decision to dismiss in large part on the State's handling of the prosecution *after* the Justice of the Peace had reinstated the charges.

▪ Having established that the responsibility for the delay that prompted the Rule 48 dismissal lies squarely with the State, our focus must turn to the nature of the prejudice suffered by Pruitt. Any dismissal under Rule 48(b) requires a finding that the defendant must have suffered "some definable or measurable prejudice."[21] The State contends that Pruitt is unable to demonstrate that he suffered the requisite prejudice to justify a Rule 48 dismissal. As noted *supra,* however, we outlined in *Fischer* the nature of the prejudices that result from the renewal of charges that were previously the subject of a *nolle prosequi* in a different forum. Although Pruitt may not suffer the traditional prejudice associated with a violation of the constitutional guaranty to a speedy trial, he was subject to the less obvious, but equally repugnant prejudices as Fischer. It is unnecessary for the Superior Court judge to have made a specific finding or that the prejudices have even been raised by Pruitt in his motion. The unexplained commencement of a duplicative prosecution, the anxiety suffered by the

---

**17.** 285 A.2d 417, 419 (Del.1971).

**18.** *Id.*

**19.** Here, of course, not satisfied with an *ex parte* reopening of previously dismissed traffic charges, the State sought to prosecute in a second forum after entering a *nolle prosequi* on all charges in Justice of the Peace Court. By this action the State leaves the distinct impression that it intended to use self-help to cure any suggested due process violation that the State suspected may have occurred in the Justice of the Peace Court.

**20.** *State v. McElroy,* 561 A.2d 154, 156 (Del. 1989).

**21.** *Id.* at 157.

defendant as a result of delay and uncertainty, the notoriety resulting from repeated prosecutions for the same offense, and the additional expenses attendant to the renewal of charges in a separate forum are not dependent on the individualized facts of a discrete case. Rather, they are inherent where the State subjects any defendant to this type of deliberate manipulation of the judicial process.

 We have often noted our distaste for the State's practice of voluntarily dismissing charges in a lower court and commencing a new prosecution on those same charges in a higher court with concurrent jurisdiction.[22] Although we recognize, and today reaffirm, the power of the Attorney General to choose the forum for a prosecution, that power is to be exercised only once. Any vacillation leaves the impression of the "unfair manipulation of the criminal process and undue disruption of court business."[23] We hold that, absent compelling circumstances not present here, once the State engages in a prosecution in a court of competent jurisdiction, it should be prohibited from pursuing that prosecution to its ultimate conclusion in any forum other than one it initially chose. This will serve not only to further the goal of preserving the judicial authority of the Justice of the Peace Court and the Court of Common Pleas implicit in *Guthman*,[24] but also to deter the State from engaging in a practice that is so readily subject to abuse that it undermines the public's confidence in the fundamental fairness of the judicial process.

## Conclusion

In conclusion, we find that the Superior Court judge acted properly and within the bounds of his discretion when he dismissed the charges against Pruitt under Rule 48(b). Although we may initially attribute the delay experienced by Pruitt to a clerical error in the Justice of the Peace Court, the facts clearly support the Superior Court judge's conclusion. We agree that when the State entered the *nolle prosequis* on the traffic charges, the State manipulated the judicial process with the intent to remedy the error in the office of the Justice of the Peace to the substantial prejudice of the defendant. The fair and efficient administration of criminal justice cannot be adequately provided for when the Attorney General may unilaterally and arbitrarily remove a case to a court with concurrent jurisdiction in a manner that subverts the authority of the lower court to the defendant's prejudice. We conclude that the substantial interest the public maintains in the speedy, fair and orderly administration of justice is inconsistent with this practice. The judgment of the Superior Court is affirmed.

---

22. *Fischer*, 285 A.2d at 419–20.

23. *Id.* at 420.

24. The Justice of the Peace Court and Court of Common Pleas' inherent power to "undertake whatever action is reasonably necessary to ensure the proper administration of justice," *Guthman*, 619 A.2d at 1178, would be undermined by a rule allowing the State to negate a decision of those courts by voluntarily dismissing a case and renewing it in a different court without the weight of the lower court's unfavorable decision. The Superior Court, sitting on appeal, reached a similar conclusion in *State v. Evans*, Del.Super., No. K96–05–0425–0427, Terry, J., order, 1996 WL 812841 (Nov. 25, 1996). In that instance the court ruled that the State could not file charges that a Justice of the Peace had dismissed for lack of evidence in the Court of Common Pleas because the dismissal was a fixed determination that cannot be set aside except by the issuing court or on appeal.