IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAMON YANCEY,[1] | § | |
| | § | No. 523, 2016 |
| Respondent Below-Appellant, | § | |
| | § | |
| | § | Court Below—Family Court |
| v. | § | of the State of Delaware |
| | § | |
| ANITA YANCEY, | § | File No. CN13-05642 |
| | § | Petition No. 14-24285 |
| Petitioner Below-Appellee. | § | |
| | § | |

Submitted: August 11, 2017
Decided: October 23, 2017

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

## **O R D E R**

This 23rd day of October 2017, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Damon Yancey ("Husband"), filed this appeal from an order of the Family Court, dated October 14, 2016, vacating its earlier order awarding Husband a 50% interest in one of his ex-wife's retirement plans. Husband's sole argument on appeal is that the Family Court abused its discretion by vacating its previous order without providing any reasons. After our review of the record, which is unclear and incomplete, especially with respect to Wife's retirement accounts, we conclude that the judgment of the Family Court is not

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

supported by the record. Thus, we reverse and remand this matter for further proceedings consistent with this Order.

(2) Husband and Anita Yancey ("Wife") were married on September 21, 2002, separated on September 21, 2013, and divorced on January 21, 2015. The parties have one daughter. The Family Court retained ancillary jurisdiction over the parties' divorce in order to address the matter of property division. The parties filed their Rule 16(c) financial report, and the Family Court held a property-division hearing on January 12, 2016. Both parties appeared at the hearing and were the only two witnesses to testify. Neither was represented by legal counsel.

(3) At the start of the hearing, the Family Court informed the parties that it would be their final hearing on property division. The parties testified and presented documentary evidence concerning their disputed marital assets and debts. The record reflects, in relevant part, that Husband was 50-years-old, was self-employed, and had no retirement accounts. Wife was 33-years-old, had been employed by the Delaware River and Bay Authority ("DRBA") since 2006, and participated in two employer-sponsored retirement plans. Wife loosely referred to her retirement accounts as the pension plan and the ING account. Although no documentation regarding either plan was entered into evidence, Wife's disclosure in the Rule 16(c) Financial Report appears to demonstrate that she has an interest

2

in the "DRBA Pension Plan" and employer-approved 401(a) (retirement) and 457(b) (deferred compensation) accounts.

(4)    It bears noting that the absence of documentary evidence relating to Wife's retirement accounts has resulted in an unclear record and has created doubt as to the precise nature of each account. Be that as it may, we will assume for the purposes of this Order that there are two separate retirement assets—the DRBA pension, which we will refer to as the "DRBA Pension" and the ING account, which we will refer to as the "ING 401(a) Account."

(5)    During the course of the hearing, the Family Court divided the parties' assets and debts. At the conclusion of the hearing, the judge indicated that all matters had been resolved except for outstanding federal and state tax liabilities. The Family Court deferred dividing the tax debt until the parties supplied additional documents. On January 21, 2016, the Family Court entered a written order ("the First Property Division Order") reflecting the substance of the bench rulings made during the January 12 hearing.

(6)    Among other things, the First Property Division Order awarded Husband 50% of the value of "Wife's DRBA pension and ING account up to September 21, 2013, the date of separation...." The Family Court instructed Husband to retain a lawyer for the purpose of drafting the necessary Qualified Domestic Relations Order ("QDRO"), implementing the substance of the court's

3

ruling, and to file the QDRO with the court by March 1, 2016. The Family Court also directed the parties to provide additional information by February 1, 2016 regarding post-separation deposits and withdrawals from the parties' joint bank account, which the court would use to determine how to divide their tax liability. The order noted that, after receiving the supplemental documentation, the Family Court would determine whether it could decide the remaining issue on the papers or would need to schedule a short hearing. The First Property Division Order stated that it was a final order.

(7) The Family Court docket reflects no further action in the case until the entry of the QDRO in May 2016.[2] Although it is not included in the record prepared by the Family Court, Husband includes in the appendix to his opening brief a copy of a Family Court notice of a hearing that was scheduled in the case on May 16, 2016. The notice of the hearing does not identify the purpose of the hearing.[3] Husband contends in his opening brief, and the transcript of the hearing suggests, that Husband had been in contact with the Family Court because Wife had not signed the QDRO as required by the First Property Division Order.[4]

---

[2] Although the QDRO was signed by the judge on May 17, 2016, we note with concern that the order was not docketed by the Family Court until February 8, 2017, nearly nine months later.

[3] *See State v. Pruitt*, 805 A.2d 177, 181 (Del. 2002) (holding that due process requires that meaningful notice of a hearing "must be reasonably calculated not only to apprise a party of the pendency of an action, but of its nature as well.").

[4] Husband had signed the QDRO on February 18, 2016. Wife did not sign until May 16, 2016.

4

(8) It is clear from the transcript of the May 16, 2016 hearing that the Family Court, after directing Wife to sign the QDRO, allowed the parties to present additional evidence relating to property-division issues, including those issues that were resolved in the First Property Division Order. The parties presented evidence regarding post-separation withdrawals and deposits from their joint bank account and their joint tax liability, which had not been resolved by the First Property Division Order. The testimony expanded, however, and the Family Court also heard arguments regarding a credit-union loan, debts from the parties' marital trip to visit Wife's family in Indonesia, and Wife's retirement funds.

(9) Wife's testimony again confirmed that she participated in two employer-sponsored retirement plans. It appears from the transcript that Wife brought documentation to the hearing about the respective values of her two retirement plans. The Family Court appears to have considered that information, but the documentation was not admitted into evidence and was not made part of the record for this Court's review on appeal. Wife testified that one of her plans was worth $16,710.76 and that her other plan, to which she had contributed $6,667, had an estimated monthly benefit of $296 upon her retirement.

(10) At the conclusion of the hearing, the Family Court indicated, contrary to the First Property Division Order, that it "probably" would not give Husband any share of Wife's one retirement account valued at $16,710, which we

5

understand refers to the ING 401(a) Account or else would award him "a smaller part than I would otherwise."[5] The Family Court further indicated that Husband would receive his marital share of the DRBA Pension. The Family Court indicated on the record that it would enter a revised property-division order based on the evidence presented. The Family Court then signed the QDRO previously submitted by Husband and signed by the parties, which awarded Husband a 50% interest in the ING 401(a) Account. Curiously, it appears as though Husband, who was directed to retain counsel to draft QDROs to effectuate the First Property Division Order as it related to retirement accounts, did not submit a QDRO recognizing his interest in Wife's DRBA Pension. In any event, the transcript of the hearing makes it clear that the Family Court believed that the wording of the QDRO gave Husband a 50% interest in the marital portion of one of Wife's two retirement plans.

(11) The next entry in the Family Court docket is a letter, dated May 26, 2016, from the Family Court to the parties, apparently in response to a letter written by Husband, dated May 25, 2016. The Husband's letter is not included in the Family Court's record on appeal. We infer from the Family Court's response that Husband had contacted the Family Court for assistance because he was having difficulty getting the signed QDRO implemented by the administrator of Wife's

---

[5] Hearing tr. at 43 (Del. Fam. Ct. May 16, 2016).

6

retirement plan. The Family Court's letter directed Husband either to consult with the attorney who had drafted the QDRO or to contact a legal-assistance program.

(12) The next entry in the Family Court docket is an amended QDRO, signed by the Family Court on July 7, 2016. The only apparent difference between the original QDRO and the amended QDRO is the name of the retirement plan, which was changed from the "Delaware River and Bay Authority 401(a) Plan" to "the Delaware River and Bay Authority Employees Defined Contribution Plan."

(13) On July 13, 2016, the Family Court entered a second property division order ("the Second Property Division Order"). The Second Property Division Order refers to the First Property Division Order as a "Pre-Trial Order." In relevant part, the Second Property Division Order states that Wife was not entitled to any reimbursement for money that she deposited into the parties' joint bank account post-separation but that "Wife shall retain her ING account in its entirety." Thus, without explanation, the Court vacated its award to Husband in the First Property Division Order of a 50% interest in the marital portion of the ING 401(a) Account. The Family Court found that Husband had assisted in paying for the parties' trip to Indonesia by purchasing plane tickets through his business. The Family Court thus ordered that Wife would be solely responsible for repayment of the parties' credit-union loan, which had been taken out to fund the same trip. Finally, the Family Court ordered that Husband would be solely responsible for

7

repayment of the parties' joint tax liability of over $8,000. Husband filed a motion for reargument of the Second Property Division Order, which the Family Court denied on August 8, 2016.

(14) Thereafter, Husband again sent a letter to the Family Court judge, requesting assistance in having the DRBA pension administrator implement the amended QDRO. Husband's letter enclosed an August 29, 2016 letter from a DRBA manager denying Husband's claim for pension benefits. The DRBA letter stated that the manager interpreted the Second Property Division Order, which held that Wife would retain "her ING account in its entirety," as rescinding the QDRO and Husband's claim for any pension benefits. Husband's letter requested the Family Court to clarify his right to Wife's pension benefits.

(15) The judge responded to Husband's letter with a handwritten notation at the bottom of his letter. The Family Court's notation, dated October 14, 2016, lends further credence to the notion that the court did not have a clear understanding regarding Wife's retirement accounts. It states, "The ING account is not to be divided.* (*See 7/13/16 Order at last page.) If there is no other Dela [sic] River and Bay Authority Plan, the 7/7/16 [Q]DRO is vacated." Husband appeals that ruling.

(16) This Court's review of an appeal from the Family Court extends to a review of the law and the facts, as well as a review of the inferences and

8

deductions made by the judge.[6]  This Court will not disturb the Family Court's rulings on appeal if its findings of fact are supported by the record and its explanations, deductions and inferences are the product of a logical reasoning process.[7]  We review legal determinations *de novo*.[8]  If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[9]

(17)  After a careful review of the record and consideration of the parties' respective contentions on appeal, we cannot conclude that the Family Court's rescission of Husband's right to a marital share of Wife's retirement funds is supported by this record.  The Family Court's reversal of the portion of the First Property Division Order awarding Husband a 50% interest in the marital portion of Wife's DRBA Pension and ING retirement account is problematic for two reasons. First, it appears from the record that the Court never implemented a QDRO recognizing Husband's interest in Wife's DRBA pension.  Under any view of this case's history, Husband is entitled to some interest in one or both of these accounts.  But withdrawing the award to Husband of his interest in the ING 401(a) Account appears to have left Husband without any interest in Wife's employer-sponsored retirement accounts, which is contrary to the Family Court's apparent intentions.  Second, the Family Court's October 14, 2016 Order offers no legal or

---

[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[7] *Thomas v. Thomas*, 102 A.3d 1138, 1142 (Del. 2014).
[8] *Glanden v. Quirk*, 128 A.3d 994, 999 (Del. 2015).
[9] *Id.*

factual basis for rescinding Husband's previously-determined right to a portion of Wife's retirement funds. Thus, the judgment cannot be upheld as a proper exercise of the Family Court's discretion.[10]

NOW, THEREFORE, IT IS ORDERED that the October 14, 2016 judgment of the Family Court is REVERSED. This matter shall be REMANDED for further proceedings consistent with this Order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[10] *See Lambert v. Lambert*, 1999 WL 507235 (Del. June 3, 1999).