IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | No. 594, 2016 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1606000313 (S) |
| DAVID M. HAZELTON, | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: November 1, 2017
Decided: January 11, 2018


Before **STRINE**, Chief Justice; **VALIHURA, VAUGHN, SEITZ,** and
**TRAYNOR**, Justices, constituting the Court *en Banc*.


Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Danielle J. Brennan, Esquire (*Argued*), and Amanda R. Nyman, Esquire,
Department of Justice, Wilmington, Delaware.

Michael W. Andrew, Esquire, Mooney & Andrew, P.A., Georgetown, Delaware.

**VAUGHN**, Justice, for the Majority:

The State appeals the Superior Court's dismissal of an indictment under Superior Court Criminal Rule 48(b) for unnecessary delay in bringing the defendant to trial. The Superior Court relied upon our case of *State v. Pruitt*[1] in deciding to dismiss the indictment. For the reasons which follow, we find that *State v. Pruitt* is distinguishable and that dismissal of this case was error.

## I.

On May 13, 2016, the Appellee, David M. Hazelton, was arrested and charged with Vehicular Assault in the Third Degree, Leaving the Scene of a Collision Resulting in Injury, Driving a Vehicle Under the Influence of Alcohol, Failure to Have Insurance Identification in Possession, Failure to Report a Collision Involving Alcohol or Drugs and Failure to Stop at a Red Light.

It is alleged that at 9:17 p.m. he was operating his vehicle on John J. Williams Highway in Millsboro, Delaware when he pulled out in front of one vehicle, ran a red light at John J. Williams Highway and Mt. Joy Road, and crashed into the front passenger side of a vehicle operated by Gena Dagostino, after which his vehicle jumped a curb. It is further alleged that he then drove from the scene and was found by a Millsboro Police Officer in a back parking lot at Oak Orchard Diner, where he

---

[1] 805 A.2d 177 (Del. 2002).

was taken into custody. Finally, it is alleged that a blood test showed that his blood alcohol content was .36, more than four times the legal limit.

A warrant for the charges was approved by the Justice of the Peace Court. Hazelton was held overnight and had his initial appearance in the Justice of the Peace Court on May 14. His bail was set at $3,800 secured. The Justice of the Peace Court then transferred the case to the Court of Common Pleas as a matter of administrative routine. An entry in the Justice of the Peace Court's disposition page indicates that the transfer was made at the request of Hazelton. At oral argument the State attributed the transfer to the Justice of the Peace Court not having jurisdiction over the offense of Leaving the Scene of a Collision Resulting in Injury.[2] But it is undisputed that the transfer was not caused by any act on the part of the State.

On May 17 the Court of Common Pleas accepted the case and added it to an arraignment calendar for the next day. That same day Hazelton posted $3,800 secured bail and was released.[3] On May 18 Hazelton was arraigned in the Court of Common Pleas despite the fact that no information had been filed in that court. Hazelton pled not guilty, and a jury trial was scheduled for September 14, 2016. On May 27 Hazelton's attorney filed an entry of appearance, two motions to suppress

---

[2] The offense of Leaving the Scene of a Collision Resulting in Injury is set forth in 21 *Del. C.* § 4902. Subsection (e) of that statute provides that "the Court of Common Pleas shall have original jurisdiction to hear, try and finally determine any misdemeanor violation of this section, and any other violation of any offense set forth in this title which was allegedly committed during the same incident. The jurisdiction of the justices of the peace over such matters is hereby terminated.

[3] Although the bond was secured, it was posted in cash.

2

evidence, a discovery request, a request for supplemental discovery and a waiver of trial by jury. On May 31 Hazelton's attorney filed a letter with a copy of Hazelton's insurance card attached, showing that his vehicle was insured at the time of the alleged offenses. On that same date the Court of Common Pleas informed Hazelton's attorney and the State by written notice that the case would remain on the court's calendar for non-jury trial on September 14.

The State never did file an information in the Court of Common Pleas. It did not file a response to Hazelton's discovery requests or take any step after Hazelton's arraignment to prosecute the case in that court. Instead, on June 20, 2016, the State caused Hazelton to be indicted in the Superior Court. He was charged with all the same offenses except that the vehicular assault charge was increased to Vehicular Assault in the Second Degree, a misdemeanor. The original third degree vehicular assault charge alleged that criminally negligent driving or operation of a vehicle caused injury to another person. The second degree vehicular assault charge alleged that negligent driving or operation of a vehicle while under the influence of alcohol caused physical injury to another person. Superior Court and the Court of Common Pleas have concurrent jurisdiction over the offenses which were indicted in the Superior Court.

The same day the indictment was filed, June 20, the Superior Court issued a warrant for Hazelton's arrest under Superior Court Criminal Rule 9. The Superior

3

Court also sent a notice intended for Hazelton informing him that he had been indicted in Superior Court. The notice itself is addressed "David M. Hazelton, Homeless, Millsboro, DE 19966."[4] The envelope within which the notice was sent, however, is also part of the record. The envelope is addressed "David M. Hazelton, 24776 Rivers Edge Rd., Millsboro, DE 19966."[5] It shows a post mark of June 22, 2016 and that it was returned to sender because "moved left no address, unable to forward."[6]

On September 2, 2016, the State filed a *nolle prosequi* as to all the charges in the Court of Common Pleas with a disposition code indicating the charges would be disposed of in another court.

On September 14, Hazelton and his attorney, being unaware of the indictment in Superior Court or the Rule 9 warrant, appeared for what they believed was Hazelton's scheduled non-jury trial in the Court of Common Pleas. While in the Sussex County Courthouse Hazelton was detained on the Superior Court Rule 9 warrant and arraigned in Superior Court. The docket indicates he was released that same day on an unsecured bond of $1,350. The bond which Hazelton had posted in the Court of Common Pleas was released on September 16.

---

[4] App. to Appellant's Reply Br. at AR2–AR3.
[5] *Id.* at AR4.
[6] *Id.* The record does not seem to explain why the court issued a Rule 9 warrant rather than a summons. Perhaps it was because of concerns about whether Hazelton's address was a current address. However, we do not speculate about that and it does not affect our analysis.

4

In Superior Court, Hazelton's case was given an October 3 case review date. On September 20 the State provided the defense with discovery materials. At Hazelton's request, the case review was continued to November 7. Hazelton again requested a continuance of the case review, and it was rescheduled for December 5. On November 15 Hazelton filed a motion to dismiss the indictment under Superior Court Criminal Rule 48(b). Relying upon our decision in *State v. Pruitt*, Hazelton argued that by abandoning the prosecution in the Court of Common Pleas and commencing a new prosecution in the Superior Court, the State had engaged in unfair manipulation of the criminal process, and that the State was bound by its choice to prosecute in the Court of Common Pleas.

The motion was heard November 18. The defense attorney reviewed the chronology of the case, about which there was no disagreement. When asked by the Superior Court judge why the State had moved the case from the Court of Common Pleas to the Superior Court, one of the prosecutors responded that the Department of Justice tries "to prosecute vehicular assault cases in Superior Court."[7] The Superior Court judge observed that "I haven't heard any compelling reason why we're now in the Superior Court" and the "Court of Common Pleas is certainly a competent court to handle injuries."[8] The court then granted the motion to dismiss.

---

[7] App. to Appellee's Answering Br. at B11.
[8] *Id.* at B12.

5

The State filed a motion for reargument. In the motion the State stated that Hazelton was indicted in Superior Court "pursuant to a Department of Justice policy to prosecute all vehicular assaults in Superior Court."[9] It argued that *State v. Pruitt* was distinguishable, that it had not engaged in any unfair manipulation of the criminal process, that it never prosecuted the case in the Court of Common Pleas because it never filed an information there, and that the indictment in Superior Court divested the Court of Common Pleas of jurisdiction, so there were not actually two cases pending at the same time. At a hearing on the motion, the court observed that "I'm satisfied that this defendant was being prosecuted in two courts at the same time, which *Pruitt* is not fond of unless you have some good reason. I haven't heard [sic] good reason yet."[10] The court then denied the motion for reargument.

## II.

"We review a trial judge's action under Superior Court Criminal Rule 48(b) according to an abuse of discretion standard."[11] A court abuses its discretion when it "exceed[s] the bounds of reason in view of the circumstances, [or] . . . so ignored recognized rules of law or practice. . . ."[12]

---

[9] App. to Appellant's Opening Br. at A93.
[10] *Id.* at A111.
[11] *State v. Fell*, 1993 WL 61699, at *1 (Del. Supr. Feb. 19, 1993).
[12] *Culp v. State*, 766 A.2d 486, 489 (Del. 2001) (citations and quotations omitted).

**III.**

On appeal, the parties repeat the contentions they made in the Superior Court.[13] Our analysis begins with a discussion of *State v. Pruitt*.[14] In that case the defendant was charged by Patrolman Leccia of the Wilmington Police Department with Driving Under the Influence, Driving While License Suspended or Revoked, Disregarding a Red Light and Possession of Marijuana. The officer gave Pruitt two summonses. One directed him to appear in the Justice of the Peace Court on November 7, 2000 on the traffic charges. The other directed him to appear in the Justice of the Peace Court on November 20 for arraignment on the marijuana charge. Pruitt appeared in the Justice of the Peace Court on November 7 as directed. A Justice of the Peace was unable to locate any paperwork documenting the traffic charges and ordered Pruitt to return the following day. On November 8, the Justice of the Peace Court personnel still could not locate the paperwork, and the Justice of the Peace dismissed the traffic complaints. When Officer Leccia learned that the traffic charges had been dismissed because the court was unable to find the supporting paperwork, he informed the clerk of the court that he had properly provided the court with the summonses and complaints. The clerk then discovered

---

[13] One of the arguments the State made in its motion for reargument in the Superior Court was that the Superior Court indictment divested the Court of Common Pleas of jurisdiction by operation of law. It footnoted two Superior Court cases in support of this contention, *State v. Strzalkowski*, 2010 WL 2961519 (Del. Super. July 28, 2010) and *State v. Mayne*, 1991 WL 236992 (Del. Super. Oct. 18, 1991). Our analysis does not require us to address this argument.
[14] 805 A.2d 177 (Del. 2002).

7

that the traffic charge paperwork had been filed in the marijuana charge file. After learning that the clerk's office had found the paperwork, a Justice of the Peace reinstated the traffic charges and reset their hearing for November 20, the same day previously scheduled for arraignment only on the marijuana charge. An entry was made in the Justice of the Peace Court record that the traffic charges had been "reopened per officer Leccia's Motion."[15] The Justice of the Peace Court did not give Pruitt any notice that a request had been made to reinstate the traffic charges or that the charges had, in fact, been reinstated. Pruitt did not appear on November 20. On January 19, 2001, the Department of Justice entered a *nolle prosequi* on the traffic charges and the marijuana charge. It then brought the identical charges by indictment in the Superior Court. On April 2, 2001, a Superior Court judge dismissed the charges, ruling that the arresting officer's *ex parte* motion to reinstate the charges in the Justice of the Peace Court and the Justice of the Peace's action in reinstating the charges violated Pruitt's right to due process.

*Pruitt* had filed his motion to dismiss in the Superior Court under Superior Court Criminal Rule 12(b). On appeal, this Court agreed with a contention made by the State that "the Superior Court judge's comments supporting his decision to grant

---

[15] *Id.* at 179.

Pruitt's Motion to Dismiss imply an equal reliance on Rule 48(b)."[16]  This Court then stated that "we shall examine this appeal in the context of Rule 48."[17]

This Court then found that "the State's entry of a *nolle prosequi* on the reinstated charges and later prosecution of those identical charges in the Superior Court unfairly manipulated the judicial process, delayed the swift resolution of the charges against Pruitt, and created undue prejudice that could only be remedied by the prompt dismissal of the charges by that court."[18]  It also found that the State's dismissal of the charges in the Justice of the Peace Court and its reinstating of them in Superior Court "in this case was prejudicial and inconsistent with the fair and orderly administration of justice."[19]  As it continued with its analysis, the Court found that the fact that the Justice of the Peace Court both failed to provide notice to Pruitt and based its decision on the officer's *ex parte* application were "prejudicial to Pruitt and standing alone constitute[d] a due process violation."[20]

The Court next discussed the prejudice to Pruitt.  Citing *State v. Fischer*[21] the Court stated that prejudice included "the anxiety suffered by a defendant as the result of the delay and uncertainty of a duplicative prosecution; the notoriety suffered by both a defendant and his family as the result of the recommencement of a prosecution

---

[16] *Id.* at 178.
[17] *Id.*
[18] *Id.* at 178–79.
[19] *Id.* at 179.
[20] *Pruitt*, 805 A.2d at 181.
[21] 285 A.2d 417 (Del. 1971).

for the same offense; and the expenses, 'legal and otherwise,' that accompany any renewal of a dismissed action."[22]

After attributing all of the delay after *nolle prosequi* of the charges in the Justice of the Peace Court to the State, the Court stated:

> We have often noted our distaste for the State's practice of voluntarily dismissing charges in a lower court and commencing a new prosecution on those same charges in a higher court with concurrent jurisdiction. . . . We hold that, absent compelling circumstances not present here, once the State engages in a prosecution in a court of competent jurisdiction, it should be prohibited from pursuing that prosecution to its ultimate conclusion in any forum other than the one it initially chose.[23]

In its conclusion in *State v. Pruitt*, the Court stated in part that "[w]e agree that when the State entered the *nolle prosequis* on the traffic charges, the State manipulated the judicial process with the intent to remedy the error in the office of the Justice of the Peace to the substantial prejudice of the defendant."[24]

*State v. Fischer* was a case in which the State *nolle prossed* charges filed in the Municipal Court of Wilmington and later commenced a new prosecution on the same charges in the Superior Court.[25]  After acknowledging that the State "has the sole power to choose the forum for a prosecution", this Court expressed "the view that, in the interest of a fair and orderly administration of criminal justice, that choice

---

[22] *Pruitt*, 805 A.2d at 182 (citation omitted).
[23] *Id.* at 183 (citation omitted).
[24]*Id.*
[25] 285 A.2d at 418.

should be exercised once-not twice."[26]    In that case the defendant appeared three times for trial in the Municipal Court.  The defendant was indicted two months after the charges were *nolle prossed* in the Municipal Court.  In the Superior Court the State gave no explanation for its *nolle prosequi* of the charges in Municipal Court, and the State's dismissal of the charges "followed a ruling in the lower court unfavorable to the prosecution's wishes."[27]

## IV.

We adhere to the view expressed in *State v. Fischer* and *State v. Pruitt* that the State's choice of a forum should be exercised once – not twice – in the absence of compelling circumstances.  This case, however, is distinguishable from those two cases.

In this case, the State did not make a choice, or election, to prosecute this case in the Court of Common Pleas.  The arresting officer, following standard procedure, took Hazelton to the Justice of the Peace Court.  The Justice of the Peace Court also followed standard procedure by transferring the case to the next court, the Court of Common Pleas.  The State did not file an information.  Court of Common Pleas Criminal Rule 7(a) provides that "an offense within the jurisdiction of the Court of Common Pleas shall be prosecuted by information."  Criminal Rule 10(a) provides

---

[26] *Id.* at 420.
[27] *Id.*

11

that "the defendant or defendant's attorney shall be given a copy of the information before the defendant is called upon to plead." That was not done in this case. The case was a late add-on to an arraignment calendar, the Department of Justice was unaware of the case before the day of the arraignment, and after that day took no steps to prosecute the case in the Court of Common Pleas. The Attorney General's office must be afforded some reasonable period of time to review a case and determine the appropriate forum.[28] The State made its choice of forum when it caused Hazelton to be indicted in the Superior Court.[29]

In *State v. Fischer* and *State v. Pruitt*, the defendants were informed that charges had been dismissed. Hazelton was never informed that the charges against him were dismissed. He did not experience the relief of being told that charges were

---

[28] *Rogers v. State*, 457 A.2d 727, 732 (Del. 1983). In *Rogers*, the defendant was charged with driving under the influence. He was arraigned in the Justice of the Peace Court on April 21, 1981 and given a trial date of June 2. On April 29 the State *nolle prossed* the charges in the Justice of the Peace Court and indicted that it would proceed with prosecution on the same charges in the Court of Common Pleas. It then filed an information in the Court of common Pleas. The defendant argued that the filing of the information in the Court of Common Pleas constituted a second election of a forum for prosecution and was prohibited under *State v. Fischer*. This Court rejected that contention, stating that "[w]e find that only one election of forum was made by the State and that the election was made within a reasonable time, having been made before any significant prosecutorial involvement occurred in the case and before any trial appearance was made." *Id.*

[29] The dissent characterizes our finding that the State did not choose to prosecute the case in the Court of Common Pleas as one which "rings hollow." However, we are satisfied that giving due regard to that court's rules as to how a criminal case is prosecuted and to the significance of the information as the charging document leads to that result. We do not think that a deputy attorney general's participation in an arraignment involving a late add-on to the calendar, an arraignment which should not have gone forward in the absence of an information, without more, commits the State to having made a choice to prosecute the case in the Court of Common Pleas.

12

dismissed, only to suffer the anxiety later of being informed that they were reinstated in a different court.[30]

The State did not *nolle pros* the charges in the Court of Common Pleas and cause Hazelton to be indicted in the Superior Court with the intent of remedying an error that occurred in the Court of Common Pleas. There was no due process or other violation of Hazelton's rights or adverse ruling of any kind in the Court of Common Pleas which the State was attempting to avoid.

The rationale for the State's decision to prosecute the case in the Superior Court rather than the Court of Common Pleas was not unexplained. When the motion to dismiss was heard in the Superior Court, a prosecutor explained that:

> [W]e do try to prosecute vehicular assault cases in Superior Court. . . . [b]ecause of the crush that the CCP unit has in terms of trying to get through the volume of cases, that because these are serious cases that

---

[30] The dissent quotes *State v. Hoffstein*, 315 A.2d 594 (Del. 1974), for the proposition that when "a case in a lower Court is nolle prossed by the Attorney General, with intent to seek an indictment and prosecution in the Superior Court later, . . . fairness requires that the defendant be notified by the Attorney General that the prosecution still lives." *Id*. at 596. We agree. In that case, the defendant was arrested for driving under the influence of a dangerous drug. He was scheduled for trial before a Justice of the Peace having jurisdiction to hear and decide the case. On the scheduled trial date, a deputy attorney general, the defendant, and the defendant's attorney all appeared, ready for trial. Upon being informed that the arresting officer would not be present, the deputy attorney general entered a *nolle prosequi*. A month later, the defendant was indicted in Superior Court on the same charge. This Court affirmed the Superior Court's dismissal under Rule 48(b). The Court noted that the defendant "had no indication of the State's intention to continue the prosecution after its dismissal of the action before the Justice of the Peace. The defendant and his family had reason to believe the matter was ended." *Id.* It further observed that by notifying the defendant in such circumstances that the prosecution "still lives," "much of the opprobrium to the defendant that follows the unexplained commencement of a new prosecution, often long after the dismissal of an earlier charge, might be eliminated." *Id.* There, unlike here, the defendant was led to believe that the prosecution against him had been terminated. *Hoffstein* is analogous to *Pruitt* and *Fischer* and distinguishable from this case for the same reason that those cases are distinguishable.

13

involve injury, we want to have them in Superior Court so they don't get lost in the shuffle.[31]

In its motion for reargument, the State repeated that "[d]efendant was indicted in Superior Court . . . pursuant to a Department of Justice policy to prosecute all vehicular assaults in Superior Court."[32]

The findings and holdings in *State v. Fischer* and *State v. Pruitt* are best read in the context of what occurred in those cases. The Court's analysis in those cases was influenced by the State's unfair manipulation of the judicial process, to avoid an unfavorable ruling in Fischer's case, and to try to hide a due process violation in Pruitt's case. The Court rightly condemned those efforts. But in this case there has been no unfair manipulation of the judicial process.

For these reasons, we find that *State v. Fischer* and *State v. Pruitt* are distinguishable and that the motion to dismiss pursuant to Rule 48(b) should have been considered under the rule normally applied to such motions. That rule is that there must be unnecessary delay attributable to the State and prejudice to the defendant beyond that normally associated with a criminal justice system necessarily strained by a burgeoning case load.[33] The defendant must show that the delay has caused some definable or measureable prejudice.[34] The record here does not show

---

[31] App. to Appellee's Answering Br. at B11–B12.
[32] App. to Appellant's Opening Br. at A93.
[33] *State v. McElroy*, 561 A.2d 154, 155–56 (Del. 1989) (citations omitted).
[34] *Id.* at 157 (citations omitted).

14

unnecessary delay. Hazelton was indicted during the month following his arrest. The State took no steps to cause delay in the Superior Court and the case was proceeding normally when the dismissal occurred. Hazelton cannot demonstrate any definable or measureable prejudice.[35] The Superior Court's dismissal of the indictment was an abuse of discretion.

## V.

Although we conclude that the dismissal should be reversed, we also find it necessary to discuss the State's conduct in this case. The Sussex County office of the Department of Justice was aware Hazelton was represented by counsel in the Court of Common Pleas because counsel filed motions to suppress, discovery requests, and a waiver of jury trial shortly after arraignment. Yet when the State determined to proceed against Hazelton by indictment in the Superior Court, it failed to inform defense counsel of its decision, when professional courtesy would have dictated that it do so. There was a delay attributed to what the State describes as an "oversight" of over two months between the date of indictment and the date of the filing of a *nolle prosequi* in the Court of Common Pleas and again defense counsel

---

[35] The dissent states that we seem to miss that Hazelton suffered prejudice of the type this Court has previously recognized as sufficient to justify dismissal under Criminal Rule 48(b). We recognize that prejudice other than prejudice in the traditional sense may suffice, as described in cases such as *Pruitt* and *Fischer*. However, we are not persuaded that such prejudice exists in this case. In *McElroy* we stated that "this Court has consistently confined its approval of a trial court's exercise of its Rule 48(b) authority to cases where the unnecessary delay is attributable to the prosecution and where the delay has been found to work some definable or measurable prejudice to the defendant." *Id.*

was not informed. The result of all this was that Hazelton and his attorney appeared in the Court of Common Pleas on September 14, 2016, expecting to participate in a case which had been dismissed. Hazelton, who had posted a $3,800 bond in the Court of Common Pleas and voluntarily appeared for what he thought was his trial, then had to undergo being detained and handcuffed for his appearance in the Superior Court. Perhaps worst of all, from June 20, 2016 to September 14, 2016, Hazelton was in jeopardy of being summarily taken into custody on the Superior Court Rule 9 warrant upon any chance encounter with a police officer, despite the fact that he had posted a $3,800 bond in the Court of Common Pleas. If that had occurred, dismissal may well be in order. Fortunately for the State and Hazelton, that did not occur. Finally, the Department of Justice has not been effective at communicating to the Sussex County bench and bar its policy of preferring to try misdemeanor vehicular assault cases in the Superior Court, because neither the Superior Court judge who heard Hazelton's motion to dismiss nor defense counsel were apparently aware of it. The public is entitled to a higher standard of professionalism from the Department of Justice than what we see here. The Department should take steps to ensure that what happened here does not happen again.

## VI

The judgment of the Superior Court dismissing the indictment is reversed and the matter is remanded to the Superior Court for further proceedings.

**TRAYNOR**, Justice, dissenting:

I respectfully dissent. In my view, the delay between Hazelton's arraignment in the Court of Common Pleas and the return of the Rule 9 summons and warrant in the Superior Court nearly four months later was both unnecessary and attributable to the prosecution's conduct. As such, Hazelton properly invoked Rule 48(b) and, under the circumstances, the trial judge acted within the bounds of his discretion in dismissing the indictment.

Here, the delay between the time Hazelton appeared in the Court of Common Pleas on May 18 to enter his not-guilty plea and demand a jury trial, and the morning of September 14 when he appeared for that trial only to be unceremoniously arrested and told that his case was back at "square one" in the Superior Court, if not unreasonable, was patently unnecessary. And it seems evident to me that this four-month delay was attributable to the State's decision to forgo the common courtesy of a call to Hazelton's lawyer once they decided to move Hazelton's prosecution to the Superior Court. The State's failure in that regard, rightly condemned by the majority, deprived Hazelton of the ability to move his case forward expeditiously in the Superior Court by answering the Rule 9 summons. We told the State more than forty years ago that when "a case in a lower Court is nolle prossed by the Attorney General, with intent to seek an indictment and prosecution in the Superior Court later, . . . fairness requires that the defendant be notified by the Attorney General that

18

the prosecution still lives."[36] No less should be expected when the State decides to move a prosecution that is underway, with motions pending and a trial date set, and yet the majority believes that the Superior Court was out of bounds to sanction the State's behavior.

The majority's suggestion that the State's failure to file a criminal information in the Court of Common Pleas mitigated the effect of the delay—implying that the State did not really prosecute Hazelton in that Court—rings hollow. Hazelton was brought before the Court of Common Pleas for an arraignment where he was called upon to plead to the charges. The State was represented by the Department of Justice at that arraignment. Hazelton, acting through a bail-bondsman, posted a $3,800 in cash in the Court of Common Pleas to secure his release, and his lawyer was active in his defense in that Court. And when the State finally realized that Hazelton had cases pending in both courts, it filed a Notice of *Nolle Prosequi* in the Court of Common Pleas, which under Rule 48(a) is the method for terminating a prosecution by information. In light of these facts, regardless of whether the Department of Justice had "commit[ted]"[37] to prosecuting the case in the Court of Common Pleas,

---

[36] *State v. Hoffstein*, 315 A.2d 594, 596 (Del. 1974).
[37] Op. at 12 n.29.

it most certainly must have felt to Hazelton as though he was being prosecuted there.[38]

The majority also seems to miss that the harm this incident caused to Hazelton is precisely the type of prejudice this Court has previously recognized as sufficient to justify dismissal under Rule 48(b). It appears that the only consideration the majority gives to the prejudice that Hazleton suffered is a single, conclusory sentence: "Hazelton cannot demonstrate any definable or measurable prejudice."[39]

But this Court long ago recognized that Rule 48(b) does not require a showing of "prejudice in the traditional sense,"[40] like the "death or disappearance of witnesses, loss of evidence, loss of counsel, or other denial of opportunity to prepare for trial."[41] Other, subtler types of prejudice are sufficient to justify dismissal under Rule 48(b), including "the anxieties suffered by a defendant as a result of a delay and uncertainty in duplicative prosecutions against him" and "the expenses, legal and otherwise, attendant upon a subsequent renewal in another court of a dismissed prosecution."[42] The majority is simply silent as to why the unnecessary and embarrassing courthouse arrest of the defendant—when he believed that he was

---

[38] To be clear, I do not mean to suggest that the State was precluded from electing to prosecute Hazelton in the Superior Court, Instead, my references to the prosecution activity in the Court of Common Pleas support my conclusion that Hazelton was subject to simultaneous prosecutions in two different courts for the same charges.

[39] *Id*, at 14.

[40] *State v. Budd Metal Co.*, 447 A.2d 1186, 1188 (Del. 1982).

[41] *State v. Fischer*, 285 A.2d 417, 419 (Del. 1971).

[42] *Id.*

there that day for his trial to begin—the pendency of duplicative prosecutions and the incurring of additional expenses—all present here—are not precisely that type of prejudice. This is a defendant who went to court on September 14, seventeen weeks after demanding a jury trial in the Court of Common Pleas, believing that the proceedings against him were coming to an end, only to be arrested and taken before another judge of a different court, so that the proceedings against him would begin anew.

Because I find that the prosecution's conduct resulted in a delay that was unnecessary and prejudicial, I would not disturb the Superior Court's exercise of discretion. It is evident that if the majority had been sitting in the trial judge's place, they would not have deployed the sanction of a Rule 48(b) dismissal in this case. But our role is not to peer over the trial judge's shoulder and examine the exercise of this power *de novo*; we ask only whether invoking Rule 48(b) was an abuse of discretion. And there is good reason for that deferential standard of review. Insulated as we are from our trial judges' courtrooms, we should be reluctant to second-guess how they manage their cases—and police their litigants. "We have long held that the Superior Court has broad discretion concerning trial management issues, and, in particular, the consideration of motions to dismiss under Super. Ct. Crim. R.

48(b)."[43]  This discretion is essential to safeguarding the Superior Court's "inherent power . . . to manage its affairs and to achieve the orderly disposition of its business."[44] Whether I or any of the other members of this Court would have invoked Rule 48(b), I find no fault in the trial judge's choice to exercise that power under the facts of this case.

---

[43] Hawkins v. State, 7792 A.2d 189, 2002 WL 384436, at *2 (Del. 2002) (unpublished table decision).
[44] State v. Harris, 616 A.2d 288, 291 (Del. 1992); see also Fischer, 285 A.2d at 420–21 (recognizing that Rule 48(b) is "a proper means of intervention by the Superior Court over the 'transfer' of cases having the foregoing results" and that "Rule 48(b) is a codification of the inherent power of the court to dismiss a case for want of prosecution").