IN THE SUPREME COURT OF THE STATE OF DELAWARE

REGINALD FAYTON, §
§
    Defendant Below, § No. 510, 2024
    Appellant, §
§ Court Below—Superior Court
    v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. N2307001417A/B
§
    Appellee. §

Submitted: November 7, 2025
Decided: January 9, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## ORDER

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, the appellant's points, and the Superior Court record, it appears to the Court that:

(1)    This is Reginald Fayton's direct appeal from his convictions for attempted first-degree murder and other crimes. Fayton's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that he has made a conscientious review of the record and the law and concluded that the appeal is without merit. Counsel informed Fayton of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Fayton of his right to supplement counsel's

presentation. Fayton provided points for the Court's consideration.[1] The State argues that the Superior Court's judgment should be affirmed.

(2) Fayton and Vernell Fayton ("Ms. Fayton") were married and lived in New York. In early 2020, they separated and Ms. Fayton moved to an apartment in New Castle, Delaware, where Fayton sometimes visited her. On February 12, 2023, law enforcement responded to Ms. Fayton's residence for an incident during which Ms. Fayton reported that Fayton had physically assaulted her. The responding officer observed injuries to Ms. Fayton's face. Fayton was charged with third-degree assault and ordered to have no contact with Ms. Fayton or her residence, but the parties continued to communicate.

(3) Several months later, on July 2, 2023, Ms. Fayton returned from vacationing in Florida with her stepson, Fayton's son. She had parked her car in the parking garage in the building in New York where she and Fayton had lived before she moved to Delaware, and where Fayton continued living after the separation. She went to the garage to retrieve the car, and Fayton confronted her angrily and tried to "start a fight" with her.[2] After the encounter, Ms. Fayton drove her stepson to the ferry on Staten Island, visited family in New York, and then returned to Delaware.

---

[1] Fayton provided points (the "October Points") after the deadline for filing the brief. Counsel submitted and requested that the Court consider them, and the Court has done so. The Court also considered the similar document that counsel originally submitted with the Rule 26(c) brief, which Fayton provided to counsel before Rule 26(c) was at issue. To the extent the issues presented in that document differed from those presented in the October Points, we find no merit in them.
[2] App. to Opening Brief at A487.

When she entered her apartment, she found that it had been disturbed and believed that Fayton had entered the apartment using a stolen key. Leaving her suitcase by the door, she went downstairs to ask the apartment manager to change the locks. She encountered Fayton in the stairwell, and he shot her multiple times, including in the shoulder, abdomen, legs, and side. As Ms. Fayton lay bleeding on the ground, she called 911 and identified Fayton as the shooter. She also told responding officers that Fayton had shot her.

(4) Surveillance footage depicted Fayton arriving at and leaving the apartment complex in a white Nissan Maxima on the day of the shooting. License plate readers on the Delaware Memorial Bridge and the Goethals Bridge in New York captured Fayton's car at times consistent with his having driven from New York to Delaware after confronting Ms. Fayton in the parking garage in New York and returning from Delaware to New York immediately after the shooting. As he fled toward New York, Fayton attempted to dispose of the gun over the Delaware Memorial Bridge. Construction workers at a job site under the bridge found a firearm in multiple pieces on July 10, 2023; ballistics testing confirmed it was the same handgun used in the July 2 shooting.

(5) A grand jury indicted Fayton for seven offenses relating to the February and July 2023 incidents: attempted first-degree murder; stalking; possession of a firearm during the commission of a felony; possession of a firearm by a person

3

prohibited ("PFBPP"); second-degree burglary; noncompliance with bond conditions; and third-degree assault. A Superior Court jury found Fayton guilty of all the charged offenses, including the PFBPP charge, which was tried in a separate "B" trial. After a presentence investigation, the court sentenced Fayton to life imprisonment for attempted murder and a total of fifty-five years of imprisonment, suspended after forty-eight years, for his other crimes.

(6) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[3] The Court must also conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[4]

(7) Fayton argues that the Superior Court abused its discretion as to a jury note about testimony provided by Ms. Fayton and her granddaughter. The jury note stated: "Count 4. 1: Granddaughter's testimony on Count 4? Also Vernell's testimony on Count 4."[5] The court interpreted the note as requesting a transcript or

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[4] *Penson*, 488 U.S. at 82.

[5] Appendix to Opening Brief at A687. In the "A" trial, when the note was submitted, "Count 4" referred to the second-degree burglary charge, as to which the jury was also instructed on the lesser-included offense of first-degree criminal trespass. *Id.* at A609-13, 683.

"read back" of those witnesses' testimony and invited counsel's response.[6] The prosecutor opined that the court should simply instruct the jury that they should rely on their recollection of the testimony, and defense counsel stated: "I concur, Your Honor."[7] The court indicated that it would instruct the jury that the court could not provide additional information and that they should rely on their collective recollection of the testimony. Both counsel stated that they did not object, and the court then instructed the jury consistent with the discussion with counsel.[8] There is no merit to Fayton's argument that the court exceeded its discretion as to the jury note.[9]

(8)    Fayton asserts that the prosecutor engaged in misconduct by making inconsistent statements about whether Fayton "emptied the clip" or not. During closing arguments, the prosecutor stated that Fayton "nearly emptied the clip in her, . . . shooting all but one of his loaded bullets into [Ms. Fayton's] shoulder, stomach, hips and legs"[10] and that Fayton "emptied a clip" into Ms. Fayton's body.[11] The

---

[6] *Id.* at A687.
[7] *Id.* at A-687-88.
[8] *Id.* at A-688-89.
[9] *See Anderson v. State*, 2018 WL 6344697, at *1-2 (Del. Dec. 4, 2018) (finding no merit to appellant's argument, in points submitted under Rule 26(c), that court erred in its response to a jury note, and stating that "[b]oth the prosecutor and defense counsel agreed before the judge answered the note that this was the appropriate response").
[10] Appendix to Opening Brief at A636-37.
[11] *Id.* at A660; *see also id.* at A677-78 (responding to defense argument that Fayton did not intend to kill because he did not hit any major organs by querying whether the jury should make that inference or should instead infer that Fayton could not continue shooting because had "already emptied the clip").

prosecutor also pointed to evidence that the construction workers found a gun and a hollow point bullet.[12] To the extent those statements were inconsistent, we discern no reversible error. Defense counsel did not object to the prosecutor's statement, and there was no dispute that Ms. Fayton was shot multiple times. Any inconsistency as to whether the gun was "emptied" or "nearly emptied" did not jeopardize substantial rights or undermine the fairness of the trial in the context of this case in which the victim indisputably suffered multiple gunshot wounds.[13]

(9) Fayton contends that the Superior Court abused its discretion because the judge who presided over trial had signed a pen register or "track and trace" warrant before Fayton's arrest. The State identified this issue before trial and brought it to the court's and defense counsel's attention.[14] At a pretrial conference, the court asked whether either party were seeking recusal, and both the prosecutor and defense counsel said they were not and that they wanted to move forward with trial as scheduled.[15] After consulting with Fayton, defense counsel reiterated, "we're

---

[12] *Id.* at A652.
[13] *See Miller v. State*, 270 A.3d 259, 267 (Del. 2022) ("Generally, when a defendant fails to contemporaneously object to prosecutorial misconduct, the right to raise the issue on appeal is waived. 'However, where substantial rights are jeopardized and the fairness of the trial imperiled, this Court will apply a plain error standard of review.' In other words, if defense counsel fails to object to alleged misconduct by the prosecutor at trial, and the trial judge does not intervene *sua sponte*, this Court reviews for plain error." (footnotes omitted)).
[14] Appendix to Opening Brief at A43, 50.
[15] *Id.* at A50, 55, 57, 59.

good to go forward."[16] After considering this Court's decision in *Willis v. State*,[17] the parties' positions, and the practical effects of recusal (which would likely require rescheduling trial), and after conducting a *Los* analysis,[18] the court determined that recusal was not necessary. Fayton's claim as to this issue is both waived and meritless.

(10) Fayton also argues that the warrant for his arrest falsely indicated an "alleged death," creating a "*Franks* issue." The affidavit supporting an application for an arrest warrant must provide sufficient information to support an independent judgment that there is probable cause to believe that the accused has committed a crime.[19] "Under *Franks v. Delaware*, a false statement in an affidavit can serve as a basis to set aside a warrant only if a reviewing court finds that the false statement was necessary to the finding of probable cause."[20] "The court makes the required finding by reviewing the affidavit with the false statement removed to determine if

---

[16] *Id.* at A59.
[17] 302 A.3d 417 (Del. 2023) (finding no error in trial judge's determination, after conducting an analysis under *Los v. Los*, 595 A.2d 381 (Del. 1991), that his having signed a search warrant during the investigation did not require him to recuse from presiding at trial).
[18] In *Los*, 595 A.2d 381, this Court established the following process for considering a motion to recuse: "[W]hen confronted with a motion to recuse, the trial judge must engage in a two-step analysis to determine whether disqualification is appropriate. The first step requires the judge to be subjectively satisfied that she can proceed to hear the cause free of bias or prejudice concerning that party. Even if the judge is satisfied that she can proceed to hear the matter free of bias or prejudice, the second step requires the judge to examine objectively whether the circumstances require recusal because there is an appearance of bias sufficient to cause doubt as to the judge's impartiality." *Jones v. State*, 940 A.2d 1, 18 (Del. 2007) (citations and internal quotations omitted).
[19] *Wingate v. State*, 2018 WL 3005445, at *3 (Del. June 14, 2018).
[20] *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

the remaining information in the affidavit is sufficient to find probable cause."[21] Because Fayton did not raise this claim in the Superior Court, it was not preserved for appellate review.[22] And, in any event, the claim is without merit. Even without considering the "alleged death" language, the affidavit contained allegations sufficient to establish probable cause for Fayton's arrest for numerous crimes, including attempted murder.

(11) Fayton challenges his sentence on several grounds. He contends that the Superior Court should not have considered a thirty-year-old domestic violence incident because the incident was an accident. He argues that the court erroneously considered undue depreciation of his offense and prior abuse of the victim when determining the sentence. And he asserts that the court's statement that Fayton would remain in prison "until you do not breathe" "took on a real personal note."

(12) We review the Superior Court's sentencing of a criminal defendant for abuse of discretion.[23] The sentencing judge has broad discretion to consider information about a defendant's personal history and past conduct when determining the sentence.[24] "Delaware does not provide for appellate review of punishments simply because the punishment deviates from sentencing guidelines."[25] When

---

[21] *Id.*
[22] DEL. SUPR. CT. R. 8.
[23] *Gingerich v. State*, 2025 WL 1793398, at *2 (Del. June 30, 2025).
[24] *Id.*
[25] *Stanley v. State*, 2013 WL 543897, at *1 (Del. Feb. 12, 2013) (citing *Siple v. State*, 701 A.2d 79 (Del. 1997)).

8

the sentence is within the statutory limits, as here, we will not find that the trial court abused its discretion unless the sentencing judge clearly "relied on impermissible factors or exhibited a closed mind."[26]

(13) Fayton has not demonstrated such error here. To the extent that he contends that the court misunderstood the facts of the older incident, he did not present that position at sentencing. Moreover, the court stated that it considered Fayton's history as suggesting a pattern of poor conduct toward women but acknowledged that some of the history was from "quite a while ago" and specifically declined to apply the "SENTAC label" of "repetitive criminal conduct or a similar type of aggravator."[27] Fayton's disagreement with the application of aggravating factors is not a basis for reversal.

(14) Nor does the judge's remark about remaining in prison until "you do not breathe" establish that the judge had a closed mind. Read in context, it appears that the statement was not directed at Fayton personally but at the idea that a sentence above the minimum would have a deterrent effect, one of the well-recognized purposes of criminal punishment.[28] Moreover, the sentencing record reflects that

---

[26] *Gingerich*, 2025 WL 1793398, at *2 (internal quotation omitted).
[27] Appendix to Opening Brief at 740-41.
[28] *See id.* at 743 ("I am going to give you a natural life sentence. Now, you're already 60. Even if I just gave you the minimum 18 and a half, you probably would not leave prison alive most likely. But I want to make it very clear that a woman who goes through what Vernell Fayton went through, who seeks, does everything she can to try to protect herself, that the law would protect her. If, in fact, you [a would-be perpetrator] decide you're going to take her life, you will forfeit

9

the court maintained an open mind about the prospective sentence. A judge "sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[29] In this case, the judge heard from Ms. Fayton, the prosecutor, defense counsel, and Fayton. His remarks indicated that he had given significant thought to the sentence before the hearing, that he wanted to consider everyone's statements at sentencing before making his final determination, and that the court maintained an open mind about the potential sentence.[30] Fayton's claims challenging his sentence are without merit.

(15) Finally, Fayton contends that his conviction for third-degree assault, which related to the February 2023 incident, unfairly manipulated the judicial process and violated his protection against double jeopardy because the State had entered a nolle prosequi on the assault charge in June 2023 but then reindicted him for the February assault after the July shooting. Because Fayton did not raise these

---

the rest of your life in decent society. You will stay within the Department of Correction until you do not breathe.").

[29] *Ferguson v. State*, 283 A.3d 74, 79 (Del. 2022).

[30] *See* Appendix to Opening Brief at A730 (stating that, even though the impact on the victim was an important factor in the sentencing decision, "I want to hear from everybody and then make my final determination"); *id.* at A744 ("I've given long thought to it. And until I sat and listened to Ms. Fayton today, listened to your statement about what your thoughts are in the crime, because I did not have those before either in the PSI, it brings into clear relief for me that you are one of those few people, and I have not done it often in my judicial career, who does deserve a discretionary natural life sentence.").

claims in the Superior Court, we review for plain error.[31] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[32] "Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[33]

(16) We find no plain error. "The Double Jeopardy Clause provides three related protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'"[34] "In a jury trial, jeopardy attaches when the jury is empaneled and sworn."[35] Because jeopardy had not attached when the State dropped the assault charge for the February incident in June 2023, Fayton's double-jeopardy claim is without merit.[36]

---

[31] *See Blake v. State*, 65 A.3d 557, 562 (Del. 2013) ("Blake did not raise directly the issue of Double Jeopardy below, and the Superior Court did not address the issue on its own. Our standard of review is therefore plain error.").
[32] *Id.* (internal quotations omitted).
[33] *Id.* (internal quotations omitted).
[34] *Id.* at 561 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).
[35] *Butler v. State*, 95 A.3d 21, 32 (Del. 2014); *see also Scott v. State*, 2003 WL 22416036, at *1 (Del. Oct. 21, 2003) ("In a criminal proceeding, jeopardy does not attach until the jury has been empaneled and sworn or, in a non-jury trial, when the first witness has been sworn.").
[36] *See Scott*, 2003 WL 22416036, at *1 ("Because jeopardy had not yet attached when the Superior Court vacated its order of dismissal and scheduled Scott's case for trial, Scott's claim of a double jeopardy violation must fail.").

(17) Fayton's claim that the State unfairly manipulated the judicial process by reviving the assault charge also fails. The State may "file a dismissal, terminating prosecution in a case, at any time prior to trial without the Superior Court's permission," and the "State is not prohibited from reindicting and prosecuting a defendant for the same offense where a *nolle prosequi* has been entered" on a charge.[37] *Fischer*[38] and *Pruitt*,[39] on which Fayton relies, are distinguishable. In those cases, the Court determined that the State unfairly manipulated the judicial process by attempting to bring revived charges in different courts "to avoid an unfavorable ruling in Fischer's case[] and to try to hide a due process violation in Pruitt's case."[40] There was no such manipulation here. Rather, it appears that the victim and the State decided to pursue the assault charge for the February incident after Fayton continued stalking the victim and then shot her multiple times in July.

(18) We have carefully reviewed the record and conclude that Fayton's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Fayton's counsel has made a conscientious effort to examine the record and has properly determined that Fayton could not raise a meritorious claim in this appeal.

---

[37] *Thornton v. State*, 1998 WL 309837, at *1 (Del. June 3, 1998).
[38] *State v. Fischer*, 285 A.2d 417 (Del. 1971).
[39] *State v. Pruitt*, 805 A.2d 177 (Del. 2002).
[40] *State v. Hazelton*, 178 A.3d 1145, 1152 (Del. 2018).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice